THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ARTHUR SULLIVAN, Appellant.

Court of Special Sessions of the City of New York, Appellate Part, Second Department, March 27, 1951.

*Sidney M. Block* and *Oscar Katz* for appellant.

*John P. McGrath, Corporation Counsel (Samuel D. Johnson and Seymour B. Quel* of counsel), for respondent.

CANNELLA, J. The People have sought to reduce the issues in this case to the following single proposition. Does the appellant's operation of a motor vehicle, within the city of New York, come within the definition of a taxicab as set forth in subparagraph (c) of paragraph 2 of subdivision b of section 436–2.0 of the Administrative Code of the City of New York?

In support of this position the history of this section of the Administrative Code is outlined to show that the element of " solicitation " was left out because it is contended that the Legislature intended to include within the purview of the section above-quoted vehicles of the type represented by the appellant. The business of the appellant in substance is the old type livery and coach business. Limousines are used and calls are made for funeral and wedding parties, maternity calls, calls to airports and others of a similar nature. No solicitation occurs on the public streets. Business in all cases is obtained either by a personal or telephone call or by letter. The issue therefore widens in the opinion of this court into a study to determine whether or not the Legislature intended in passing the section cited to cover the type of business as heretofore described.

The intent of the Legislature may be determined by resort to the preamble which states the purpose of the act. The title of the section is " *Taxicabs; hacks; drivers; licensing, regulation of.*"

It is plain from the title of the act that the Legislature was dealing with taxicabs and hacks as we have known them legally and historically. The preamble plainly states that " traffic congestion; long hours and inadequate income 'for taxicab drivers; excessive competition because of the number of taxicabs " etc., prompts the enactment of this law. (Administrative Code, § 436–2.0, subd. a, par. 1.) The survey of the Legislature was a survey of the " taxicab industry " as it then existed. It is clear from the preamble that the purpose of the Legislature was mainly to freeze the number of cabs to that of the existing fleets. Nowhere in the preamble is mention made of a purpose to include " autos for hire " which were never classified as taxicabs.

When the People argue that the whole test of whether a vehicle is a taxicab or not is whether it is a " vehicle carrying passengers for hire " of a certain capacity, they wholly neglect

other provisions of the law relating to the kind of business the law envisions. For instance, clause (b) of paragraph 24 of subdivision c of section 436–2.0 of the Administrative Code reads that the driver of a taxicab shall "not refuse or neglect to convey any orderly person or persons upon request in the city unless previously engaged or unable or forbidden by the provisions hereof, so to do." Do the People contend that an enterprise which hires coaches on special call shall obey the above section? Do they contend that any person can walk into a coach company and order them to put a car on the street for a half-mile ride at taxicab rates? This interpretation has never been made in the city of New York and would put the coach business into a chaotic condition.

The purpose of the law was to bring peace and stability to the taxicab industry — not to destroy the coach industry. Under the Administrative Code the regulation of the taxicab industry comes under the police department. The police department has set up rules and regulations and the entire taxicab industry must conform to them. The granting of hack licenses is strictly limited. The vehicle used must conform to the police department ukase. The vehicle must be painted in garish colors. Lights must bedeck the top and sides of the vehicle. A taximeter must be installed. No one other than the driver can sit in the front seat.

Of course there are fringe cases where operators of vehicles for hire which are essentially taxicabs seek to escape the regulation of the law. Their subterfuges have rightly been stricken down by the authorities. (*People* v. *Reser*, 297 N. Y. 922 [1948].)

But here is an effort to classify as taxicabs motor vehicles which everybody knows are not taxicabs and subject them to regulations which common sense tells us do not apply to them. The clear purpose of the Legislature was to apply the law to taxicabs and hacks as they were historically and legally known and not to govern an industry which was not even considered in their investigations.

Judgment reversed on the law. Complaint dismissed and defendant discharged. Fine ordered remitted. All concur.

DOYLE and PAIGE, JJ., concur.

Judgment reversed, etc.